**Rolland v. Senn**

30

*Slade H. McLaughlin, Virginia King* and *Paul A. Lauricella,* for plaintiffs.

*Jane A. North* and *Francis J. Deasey,* for defendants Senn Landscaping, Inc. and Steven Senn.

*Mark. T. Riley, Michael J. Dempsey, James W. Gicking* and *Adam M. Sorce,* for defendants United Construction Services, Inc. and Bruce Irrgang.

*Thomas F. Reilly, Allan Scholler, Joseph A. Gorman, John J. Snyder* and *Brett A. Wolfson,* for defendants Modern Group LTD and Modern Equipment Sales and Rental Co.

YOUNGE, *J.,* January 31, 2014—The above-captioned

plaintiffs filed this appeal from a series of orders signed and entered by this court on August 6, 2013. These orders denied their motion for post-trial relief and granted all motions for post-trial relief filed by the defendants to the extent that these motions request a new trial on all issues.

The defendants, Bruce Irrgang and United Construction Services, Inc., appeal from these orders to the extent that the award of a new trial conflicted with their request for a judgment notwithstanding the verdict that would have made the award of a new trial unnecessary. Modern Equipment Sales and Rental Co., and Modern Group, LTD. (the modern defendants) filed a similar appeal from the orders awarding a new trial on all issues.

Jury selection in this matter began on Friday, March 8, 2013 and opening statements began on Monday, March 11, 2013. The jury returned a verdict in favor of the Rollands on March 28, 2013. Specifically, the jury found that one hundred percent (100%) of the Rollands' harm could be attributed to the defendants' combined negligence. It apportioned liability between the defendants as follows: Stephen Senn twenty three point five percent (23.5%); Senn Landscaping, Inc. twenty three point five percent (23.5%); Bruce Irrgang sixteen percent (16%); United Construction Services, Inc. sixteen percent (16%); Modern Equipment Sales & Rental Co. ten point five percent (10.5%); and Modern Group, LTD ten point five percent (10.5%). It awarded eighteen million dollars to Mr. Rolland and two million dollars to Ms. Rolland for loss of consortium. The jury found that Stephen Senn acted recklessly and awarded an additional sixteen thousand in punitive damages. The jury found no comparative negligence on the part of Mr. Rolland.

Critical was the fact that the Jury was never asked to assess negligence against the modern defendants, Senn Landscaping Inc., and Stephen Senn because prior to trial the motion court granted the Rollands' motion for partial summary judgment. A fair reading of the motion court's order revealed that it found, as a matter of law, that the defendants had negligently entrusted the track loader to Stephen Senn's ten-year-old son and that this conduct caused Mr. Rolland's injuries. In response to a motion to reconsider filed by the modern defendants, the motion court modified this ruling to specifically "state that summary judgment is not granted on plaintiffs' claims for punitive damages against defendants and that the issue of the apportionment of the negligence of all parties will still be decided by the jury." Interestingly, the motion court's order left open questions of liability against defendants Bruce Irrgang and United Construction Services. As previously discussed, following trial, the Jury found Bruce Irrgang and United Construction Services negligent and apportioned damages.

All parties filed motions for post-trial relief; this court requested briefs and scheduled argument. After transcripts were complete, this court held argument on August 5, 2013, and the following day, on August 6, 2013, entered an order awarding a new trial on all issues. All parties with the exception of Stephen Senn and Senn Landscaping, Inc. filed an appeal from the award of a new trial.

Facts: Summary of the Accident

In December of 2009, the Hollands brought this action for compensation for personal injuries that occurred on a construction site in August of 2009. To summarize the case in the most concise form, Mr. Rolland suffered an above-

the-knee amputation of his left leg after being struck by a track loader that was being operated by the ten-year-old son of Stephen Senn.

This accident occurred on a 15-acre property owned by defendant, Bruce Irrgang, during construction of a replica of the Hogan Bridge, the original of which can be found at the Augusta National Golf Club near Atlanta, Georgia. At the time of trial, Mr. Irrgang was a wealthy businessman who owned several construction companies, including United Construction Services, and several large homes that could be characterized as estates. He decided to create a replica of the Hogan Bridge on one of his personal estates in Wayne, Pennsylvania. To carry out this task, he contracted with several parties including Mr. Rolland and, Mr. Rolland's longtime acquaintance, Stephen Senn of Senn Landscaping. Mr. Rolland was hired to complete electrical work while the Senn defendants were hired to dredge a pond that was under this replica Hogan Bridge.

To carry out the dredging, Mr. Rolland, acting on behalf of United Construction Services, rented a track loader from the modern defendants and then in turn loaned the track loader to the Senn defendants. Stephen Senn of Senn Landscaping in turn allowed his ten-year-old son to operate this track loader on the Irrgang construction site. When the modern defendants first delivered a track loader to the Irrgang property on August 4, 2009, Mr. Rolland signed for the track loader on behalf of United Construction Services. (Tr. Trancr, 28-29 (3/21/13).) This track loader experienced mechanical difficulty and the modern defendants swapped that track loader out for a different loader on August 5, 2009. Interestingly enough, all of the workers who were involved in this construction project described themselves as independent contractors. From the evidence presented

at trial, United Construction Services appeared to have no clearly identifiable employees on the construction site, and its owner, Bruce Irrgang, was only briefly onsite. These facts alone created a major contention throughout trial as to the issue of whether the Plaintiff, Ruick Rolland, acted as project manager for the work supervised on behalf of Defendant, Untied Construction Services.

Weather conditions on August 4 and 5 of 2009 brought dredging operations to a halt. Dredging resumed some nine or ten days later on August 14, 2009 after Mr. Rolland contacted the Senn defendants and told them to return to the site because he felt conditions were suitable for operations to resume. The accident ultimately occurred on August 14, 2009 when Mr. Rolland intervened in the child's operation of the track loader by giving hand signals and directing his operation of the machine. When Mr. Rolland testified under oath at trial, he described the accident as follows:

> I had my hand out. I said, "Stop". And he went [] I said "stop" the second time; and he, again, acknowledged. Then I reached down on the ground and picked up the hose. I was not in front of the machine at any time. And I started to bring the hose up. And I was flipping it over the cab. And about halfway across, the machine turned. I felt my leg get pulled under the track. I felt my bones crushing. And I was screaming.

(Tr. Transcr. 63-64 (3/22/13).)

The Rollands proceeded against the modern defendants based on a theory of negligent entrustment. The chief evidence in support of this theory was the fact that Kevin Cann, the truck driver who delivered the track loader to the Irrgang property on August 4 and 5, 2009, saw the

ten-year-old boy operating the track loader. (Tr. Transc. 7 (3/13/13); 40 (3/12/13).) Mr. Cann, the modern defendants employee and agent, reported seeing the child's operation of the track loader to a manager with the modern defendants, Paul Mutter. Mr. Mutter, when he testified at trial, admitted that he should have consulted Modern's General Counsel, Thomas Callahan, when he heard that a child was operating the modern defendants' track loader. (Tr. Transcr. 7-71 (3-13-13).) When Mr. Callahan testified at trial, he conceded that if he had known that a ten-year-old child was operating the track loader he would have contacted Mr. Rolland to inform him that he would attempt to repossess the track loader if this behavior was permitted to persist. (Tr. Transcr. 57(3/21/13).)

The plaintiffs espoused a similar theory of negligent entrustment against Bruce Irrgang and United Construction Service. Under this theory, plaintiffs pointed out that United Construction Services leased the track loader from the modern defendants and permitted the Senn defendants to use the track loader. They also highlighted the fact that the accident occurred on a property that belonged Mr. Irrgang. According to Mr. Rolland's version of events, he and Mr. Irrgang stood together on the construction site and discussed the fact that Stephen Senn's ten-year-old son was operating the track loader while they both watched the boy dredge the pond. (Tr. Transcr. 41-43 (3-21-13).) The Senn defendants admitted liability from the start (Tr. Transcr. 53 - 59 (3-12-13), but argued that their conduct was not reckless.

An understanding of Mr. Rolland's background and the relationship between the parties is critical to any assessment of the varying degrees of liability between the parties to this lawsuit. Mr. Rolland went to a vocational

high school and was skilled in carpentry, building maintenance, auto body and machine work. Specifically, he was familiar with construction site protocol and the track loader involved in this accident. Mr. Rolland began working for Mr. Irrgang in the early 1990s and continued working for him for over twenty years up and until the time of this accident. According to Mr. Rolland, in 1999 or 2000 he began to work full time for Mr. Irrgang and that this work consisted mostly of renovating or improving the various private estates that Mr. Irrgang owned. (*Id.* 116-117.) When describing this relationship during an interview after the accident to a workers' compensation claims representative, Elizabeth Kutz, Mr. Rolland allegedly said:

> He [plaintiff] sometimes is hired as a supervisor of other employees due to his knowledge of the property or house where the work/job was being done...[That he] does work for [Mr. Irrgang] at his house, and for the companies [Mr. Irrgang] owns, which are United Construction, United Installation, and Spackle Drywall.

(Westfield Workers' Compensation File Produced During Trial).

Mr. Rolland testified that prior to the accident he had known Mr. Senn for approximately 25 years, and that for a brief period of time his wife's sister had been married to Mr. Senn's brother. (Tr. Transcr. 25 (3/22/13).) The uncontested fact established at trial was that Mr. Rolland was well aware that Mr. Senn's ten-year-old son was operating a track loader on the construction site. Mr. Rolland admitted that he saw the ten-year-old boy operate the track loader on Mr. Irrgang's property on August 4 and 5 of 2009. He also admitted that he felt comfortable enough

with the situation that he was willing to approach the track loader and direct the child's operation of the machine on August 14, 2009. (Tr. Transcr. 62-63 (3/21/13).)

### Facts: Workers' Compensation File Produced During Trial

Critical to this court's decision to award a new trial was the workers' compensation file related to this matter that was produced during trial. Prior to trial, Bruce Irrgang and United Construction Services filed a motion to preclude what they characterized as irrelevant post-accident statements. (Defendants Bruce Irrgang's and United Construction Services, Inc.'s motion in limine to preclude alleged post-accident statements/conduct by defendants not relevant to any proper issue in the case (5/15/12).) Co-defendants either joined the motion or filed similar motions of their own. This motion sought to preclude the fact that Stephen Senn and another employee of Senn Landscaping initially tried to hinder the police investigation by covering up the fact that Mr. Senn's ten-year-old son was operating the track loader when it struck Mr. Rolland.[1] The motion also sought to preclude allegations that Mr. Senn attempted to convince Mr. Rolland to fraudulently file a claim with the workers' compensation carrier for Senn Landscaping.

This court denied in part and granted in part the motion in limine to preclude post-accident statements. This court denied this motion to the extent that defendants sought to preclude evidence that the Senn defendants attempted to mislead investigators following the accident because this evidence was relevant to possible consideration of

---

1. Matt Fischer, Senn landscaping employee and family member, initially told police that he was operating the track loader at the time of this accident.

punitive damages. In particular, the evidence illustrated that Mr. Senn knew that he should not have let his ten-year-old son operate the track loader. However, this court granted the motion to the extent that it addressed some scheme to defraud the workers' compensation carrier for Senn Landscaping. This alleged scheme was irrelevant to any disputed matter at trial. It was not conclusive evidence of a *crimi falsi* conviction and because the Senn defendants had admitted liability, it was irrelevant to the establishment of negligence, causation, damages or the liability of the remaining defendants. This scheme could also have been construed as an attempt on the part of Mr. Senn to pay the medical bills of his long-time acquaintance and onetime, albeit distance, family member, Mr. Rolland. This court was attempting to streamline the case and prevent mini-trials on matters that were really irrelevant collateral issues. The Rollands' counselors were unhappy with this ruling.

After opening statements, on Wednesday, March 13, 2013, counsel for the Rollands sought to revisit the issue of preclusion of the alleged workers' compensation fraud committed by Mr. Senn. Specifically they sought to obtain and introduce statements contained in a workers' compensation file that were allegedly made by Mr. Senn indicating he was supervising Mr. Rolland and that Mr. Rolland was working as an employee of the Senn defendants at the time of this accident. Counsel for the Rollands sought to impeach Mr. Senn's contradictory deposition testimony wherein he stated that Mr. Rolland was his supervisor on the jobsite. They argued that the statements allegedly made by Mr. Senn were directly relevant to one of the primary defenses in the case — that Mr. Rolland was the onsite supervisor of everyone on

the project. They felt Mr. Senn's contradictory testimony would affirmatively rebut the contention that Mr. Rolland was the onsite job supervisor and ultimately responsible for his own injury. (Tr. Transcr. 7(3/13/13).)

This court denied this request and reaffirmed its earlier ruling. (*Id.*) The following day, on Thursday, March 14, 2013, Counsel for the Senn defendants advised this court that on Tuesday, March 12, 2013, counsel for the Rollands approached her and requested that she check her file for any recorded statements related to the accident that her clients might have given. She went on the explain that on Wednesday, March 13, 2013, counsel for the Rollands again approached her about the issue and informed her that he had been in contact with a workers' compensation adjuster from Westfield Insurance Company back in March of 2010, and that he was told that Mr. Senn had made a statement pertaining to this accident. That evening she contacted the Westfield adjuster and for the first time obtained a copy of a statement that defendant, Stephen Senn, made in connection with a workers' compensation claim. Upon receiving a copy of this statement, she forwarded it on to counsel for the Rollands. (Tr. Transcr. 5-6(3/14/13).)

Armed with this statement, counsel for the Rollands approached this court and again sought to reopen the issue of workers' compensation fraud. Specifically, they sought to impeach Mr. Senn's anticipated testimony at trial with the inconsistent nature of his alleged statements found in the workers' compensation file juxtaposed to his deposition testimony. All defendants, including the modern defendants, objected to this statement being used at trial. Counsel for the modern defendants argued that Mr. Senn's recorded statement was extremely prejudicial in

that it directly contradicted the theory of the case that the modern defendants espoused during opening statement. Counsel argued that the modern defendants would have approached the case in a different fashion if they had been aware of the statement prior to trial. (Tr. Trancr. 12 (3/14/13).)

At this point, this court agreed to reconsider the issue but also ruled that the entire workers' compensation file should be produced and made available to all counsel. By the end of the day on Thursday, March 14, 2013, attorneys working with counsel for the Senn defendants had obtained a copy of the workers' compensation filed and were redacting sections for attorney client privilege and work product. (Tr. Transcr. 91 (3/14/13).) By Friday, March 15, 2013 the contents of the workers' compensation file were produced and reviewed, at which point, it became clear that the issue was much bigger than initially described on motion in limine. It was now evident that all of the parties to this litigation, with the exception of the modern defendants, were potentially implicated in an alleged scheme to obtain workers' compensation insurance for Mr. Rolland. (Tr. Trancr. 11 (3/15/13).) In fact Mr. Rolland, himself, allegedly had made a statement to workers' compensation adjuster, Elizabeth Kutz. In this statement, the he allegedly admitted that he was working as a supervisor for Senn Landscaping, Inc. at the time of this accident.

The contents of this workers' compensation file had vast implications for this litigation that was already more than a week underway. All parties essentially reversed their prior positions on key elements of the content of the workers' compensation file. The Rollands now wanted the entire file excluded, including the alleged statements

of Stephen Senn, while all of the defendants wanted any potential fraudulent conduct on the part of Mr. Rolland placed before the jury. This court considered granting a mistrial because of these implications; however, entering a mistrial would have been a drastic measure considering both judicial economy and the economic and emotional investment of the parties. In an attempt to forge ahead, this court reaffirmed its earlier ruling and precluded the entire issue. It attempted to avoid placing the parties on trial for any collateral agreements that they might have made in the wake of this accident. (Tr. Transcr. 9-25 (3/15/13); 98 (3/20/13).)

Facts: Testimony of Ruick Rolland in the Wake of the Workers' Compensation File

Proceeding with trial thereafter became extremely precarious for all of the parties, with the exception of the modern defendants, once their alleged scheme to defraud the workers' compensation carrier for the Senn defendants was exposed. Frustrating was the fact that this court repeatedly told counsel for the Rollands to quit attempting to revisit an issue that this court already disposed of on motion in limine.[2] This court had previously ruled that

---

2. Counsel should not be surprised by the award of a new trial on all issues because this court was quite candid with counsel and repeatedly placed them on notice of its belief that there were significant legal issues that might lead to reversal in the appellate courts. During *in camera* discussions, reference to which can be found throughout the record, this court explained to counsel that it was grappling with both the motion court's pretrial award of summary judgment in favor of the Rollands and the alleged scheme to commit workers' compensation fraud that came to light during trial.

When the workers' compensation file first came to light, this court warned counsel that they were headed down a road that might lead to reversal. It stated, "[Let] me say this, folks. I've tried to suggest to you all before, this case isn't as complicated as you all are making it and you are making it real complicated. And you really don't want to try this case again. Well, I'm gonna tell you right now, if I do what you're asking

42

Mr. Senn's offer to submit a claim to the Senn defendants' workers' compensation carrier would not be admissible at trial. When this court issued this ruling, it was not aware that a claim had in fact been submitted and statements given in support of the same. None of this would have become apparent if counsel for the Rollands had not insisted on revisiting the issue for their own benefit. This new evidence gave the trial an unplanned twist particularly for the modern defendants who claimed to have known nothing of the alleged scheme.[3]

Upon advice of counsel, Stephen Senn invoked his fifth amendment right against self incrimination and refused to testify at trial. (Tr. Transcr. 43 (3/15/13).) Since counsel for the plaintiffs did not call Bruce Irrgang in their case-in-chief, he chose not to testify in his own defense. (Tr. Transcr. 14-15 (3-26-13).) Mr. Rolland, on the other hand,

me to do, you're going to try this case again... I've been doing this a lot longer than you, counsel, and I'm telling you you're gonna try this case again. If I let you do that you're gonna try this case again. That's a reversal with a big fat R right on it." (Tr. Transcr. 18-19 (3-13-13).) After production of the workers' compensation file, this court urged counsel to enter into a stipulation and told counsel, "[I]n the absence of such stipulation, the modern defendants would clearly have a legitimate issue for appeal that would remain open. So I believe this is something, that a stipulation should be entered into for their behalf. But in absence of that, a clear, clear issue for appeal would remain that might lead to the reversal of this case." (Tr. Transcr. 13-14(3-15-13).)

With specific reference to the motion court's pretrial rulings, this court stated, "Now, let me say this, also: I have urged all the parties to resolve this case. I have made it very clear, in light of pretrial rulings, there's a better than average chance this case is going to be retried again in about three years anyway because of pretrial rulings. And so, therefore, I've urged all the parties to swallow your pride and come up with a way to resolve this case with honor." (Tr. Transcr. 98 (3-22-13).) It went on to state, "There [are] a lot of reasons for everybody to resolve this. A lot of reasons. I've said it to you privately. But if not, let's just keep on going." (Tr. Transcr. 22 (3-27-13).)

3. The Pennsylvania Rules of Civil Procedure, 4001 *et seq.*, covering depositions and discovery were specifically created to prevent trial by ambush.

needed to take the stand and testify because he had the burden of proof — his testimony was required to establish his case.

Despite the fact that this court precluded the issue of workers' compensation fraud, Mr. Rolland still had a very hard time with this issue on cross-examination when, for example, the following exchange occurred:

[Defense counsel] Q. Mr. Rolland, ten days after this accident, did you tell anybody that you were hired to supervise the job? [Mr. Rolland] A. No, I did not...[Defense counsel] Q. Did you tell anybody, Mr. Rolland, that you were supervising Mr. Senn's employees making sure they were getting the job done and getting it done properly? [Mr. Rolland] A. No, I never said that. [Defense counsel] Q. Did you say to anybody over the phone that you were supervising Mr. Senn and the physical work that his employees were doing? [Mr. Rolland] A. I have no recollection of saying that over the phone to anybody. [Defense counsel] Q. Mr. Rolland, on this particular job that we're here for on Wayne Avenue, you considered yourself the primary contractor; didn't you? [Mr. Rolland] A. No, I did not. [Defense counsel] Q. Did you ever say at any point before today that you were the primary contractor at 655 North Wayne Avenue? [Mr. Rolland] A. I never said that.

(Tr. Transcr. 8 - 14 (3/22/13).)

Following this court's ruling on the workers' compensation file and the decision of Mr. Senn to invoke the fifth amendment, the plaintiff appeared to have anticipated the problem that he would face on cross-

examination. During direct-examination, Mr. Rolland went to great lengths to explain that he was heavily sedated and incoherent in the days following the accident. (Tr. Transcr. 68-80 (3/21/13).) His repetitious testimony regarding his mental state following the accident sounded rehearsed, planned and choreographed.

Standard of Review for the Award of a New Trial

The purpose of post-trial motion practice governed by Pennsylvania Rule of Civil Procedure 227.1 is to give the trial court an opportunity to review and reconsider its earlier rulings and correct its own errors before an appeal is taken. *Lahr v. City of York*, 972 A.2d 41 (Pa. Cmwlth. 2009). Post-trial motions should be granted only when the moving party suffered prejudice as a result of the trial court's clear error. *Id.* 54. When discussing the standard of review applied by appellate courts reviewing a trial court's grant of a new trial, the Pennsylvania Supreme Court has stated:

> Trial courts have broad discretion to grant or deny a new trial... Although all new trial orders are subject to appellate review, it is well-established law that, absent a clear abuse of discretions by the trial court, appellate courts must not interfere with the trial court's authority to granted or deny a new trial... [W]hen analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion. Each review of a challenge to a new trial order must begin with an analysis of the underlying conduct or omission by the trial court that formed the basis for the motion. There is a two-step process that a trial court must follow when responding to a request for new trial. First, the

trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The harmless error doctrine underlies every decision to grant or deny a new trial...

To review the two-step process of the trial court for granting or denying a new trial, the appellate court must also undertake a dual-pronged analysis. A review of a denial of a new trial requires the same analysis as a review of a grant. First, the appellate court must examine the decision of the trial court that a mistake occurred.

At this first stage, the appellate court must apply the correct scope of review, based on the rational given by the trial court. There are two possible scopes of review to apply when appellate courts are determining the propriety of an order granting or denying a new trial. There is a narrow scope of review: "[w]here the trial court articulates a single mistake (or a finite set of mistakes), the appellate court's review is limited in scope to the stated reason, and the appellate court must review that reason under the appropriate standard." [Conversely,] [i]f the trial court leaves open the possibility that reasons additional to those specifically mentioned might warrant a new trial, or orders a new trial 'in the interests of justice,' the appellate court applies a broad scope of review, examining the entire record for any reason sufficient to justify a new trial. Even under a narrow scope of review, the appellate court might still need to examine the entire record to

determine if there is support for any of the reasons provided by the trial court.

The appropriate standard of review also controls this initial layer of analysis. If the mistake involved a discretionary act, the appellate court will review for an abuse of discretion. If the mistake concerned an error of law, the court will scrutinize for legal error. If there were no mistakes at trial, the appellate court must reverse a decision by the trial court to grant a new trial because the trial court cannot order a new trial where no error of law or abuse of discretion occurred.

If the appellate court agrees with the determination of the trial court that a mistake occurred, it proceeds to the second level of analysis. The appellate court must then determine whether the trial court abused its discretion in ruling on the request for a new trial. [Discretion must be exercised on the foundation of reason.] An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. [Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion.]

When determining whether the trial court abused its discretion, the appellate court must confine itself to the scope of review, as set forth in our preceding discussion. If the trial court has provided specific reasons for its ruling on a request for a new trial, and it is clear that the decision of the trial court is based exclusively on

those reasons, applying a narrow scope of review, the appellate court may reverse the trial court's decision only if it finds no basis on the record to support any of those reasons. [As a practical matter, a trial court's reference to a finite set of reasons is generally treated as conclusive proof that it would not have ordered a new trial on any other basis.] Alternatively, where the trial court leaves open the possibility that there were reasons to grant or deny a new trial other than those it expressly offered, or the trial court justifies its decision on the "interests of justice," an appellate court must apply a broad scope of review and affirm if it can glean any valid reason from the record.

*Harman ex rel. Harman v. Borah*, 756 A.2d 1116. 1121-23 (Pa. 2000).

Discussion: Explanation for the Award of a New Trial

The first and foremost reason that this court awarded a new trial was based on the fact that it should have granted the motion for mistrial filed by the modern defendants following the production of the workers' compensation file. The second reason that this court awarded a new trial was because the jury verdict assessing no liability against Mr. Rolland was against the weight of the evidence to the extent that it shocked the conscience.

For reasons that will be more fully explained below, this court committed prejudicial error when it denied the modern defendants' motion for a mistrial following production of the workers' compensation file midway through trial. The workers' compensation file had a drastic impact on the flow and tempo of trial because suddenly prospective, planned witnesses did not testify. Based on the late production, the modern defendants were also

prevented from fully cross-examining Mr. Rolland with the contents of the workers' compensation file, the contents of which contained an alleged admission by Mr. Rolland that he was actually working as a supervisor for Mr. Senn at the time of this accident. This admission would have bolstered the defense presented by the modern defendants. The workers' compensation file was particularly significant for the modern defendants because they were the only party that was not involved in the alleged scheme to defraud the workers' compensation carrier for the Senn defendants, and they may truly have been surprised by this evidence.

The jury's finding of no comparative negligence on the part of Mr. Rolland shocked the conscience of this court and was against the weight of the evidence. Along these same lines, the jury's finding of over twenty percent (20%) responsibility on the part of the modern defendants shocked the conscience of this court and was against the weight of the evidence. Mr. Rolland's involvement in this construction project was much more significant than that of the modern defendants. Mr. Rolland had known and worked with Bruce Irrgang and Stephen Senn for many years. Mr. Rolland saw the ten-year-old operate the track loader every single day that he was on the construction site — a track loader for which he ordered and signed. Furthermore, after the second day of dredging, weather conditions brought work on the project to a halt for several days. The Senn defendants returned to the site to commence dredging after Mr. Rolland contacted them and directed them to return. The jury verdict finding no liability on the part of Mr. Rolland was shocking.

The rulings made by this court on post-trial review were never meant to overturn or overrule the motion court's award of summary judgment in favor of the

plaintiffs. However, this court felt that the pretrial award of summary judgment on the issue of negligent entrustment in favor of the Rollands permeated this trial and may have contributed to this shocking verdict. As will be more fully explained below, it had the affect of shifting the burden of proof to the modern defendants to prove that Mr. Rolland was actually responsible for his own injury when it was the Rollands who should have been required to carry the burden of proof on all issues. The motion court's ruling further prejudiced Bruce Irrgang and United Construction Services by suggesting that they had negligently entrusted the track loader to Stephen Senn's ten-year-old son when issues of factual dispute remained as to their liability. The motion court's pretrial grant of partial summary judgment on the issue of negligent entrustment presented the case in a skewed fashion. In reality either everyone on the Irrgang construction project should have been held liable for allowing the ten-year-old boy to operate the track loader or the issue of negligent entrustment should have been submitted to the jury.

The defendants in this action had a constitutional right to present their defense before an unbiased jury. The pretrial grant of partial summary judgment combined with this court's failure to grant a mistrial in the face of the alleged admissions contained in the workers' compensation file hampered the ability of the defendants to present a defense and the jury returned a verdict that was against the weight of the evidence.

### The Appeal Filed By Ruick and Holly Rolland

In their 1925(b) concise statement of matters complained of on appeal, the Rollands primarily argued that this court erred in awarding a new trial on all issues because such an

award was not justified. They raised the following issues:

1. The trial court erred, or otherwise abused its discretion, in granting the defendants' motions for a new trial by finding that the summary judgment order entered by [the motion court] was erroneous, and/or by finding that it failed to acknowledge the existence of outstanding issues of material fact, for the following reasons: a. The propriety of [the motion court's] order was not properly before this court because an adverse ruling on summary judgment cannot be challenged by post-trial motions pursuant to Pennsylvania's Rules of Civil Procedure; b. The law of the case doctrine and/or coordinate Jurisdiction Rule preclude a trial judge from revisiting an earlier order such as an order granting summary judgment in the context of post-trial motions; c. There were no disputed issues of material fact that were overlooked by [the motion court]; d. The court did not identify any disputed issues of material fact that were purportedly improperly overlooked by [the motion court]; e. There were no issues of material fact pertaining to whether there was a superseding cause of the damages suffered by the [P]laintiffs; f. The acts or events referenced by the court did not constitute a superseding causing and/or superseding causes of the damages suffered by the plaintiffs; g. [the motion court's] order did not impermissibly shift the burden of proof; h. [the motion court's] order was properly decided on the basis of the facts and arguments that were before [the motion court] when [it] issued that order; i. Neither the modern defendants, nor the Senn Defendants, raised in their responses to plaintiffs' motion for summary judgment any disputed issues of material fact by affidavits, documentary evidence,

or deposition testimony; j. The undisputed evidence presented to [the motion court] established the requisite elements of the tort of negligent entrustment as a matter of law, and [defendants have not identified any fact that warranted a contrary result.

2. The trial court erred, or otherwise abused its discretion, in granting the defendants' motions for a new trial by finding that the [V]erdict was against the weight of the evidence, when, in fact, it was amply supported by the evidence adduced at trial.

3. The trial court erred, or otherwise abused its discretion, in granting the defendants' motions for a new trial by finding that [P]laintiffs did not offer sufficient evidence to prove the elements of the cause of action of negligent entrustment, when, in fact, each of the prerequisite elements of the tort was established.

4. The trial court erred, or otherwise abused its discretion, in granting the defendants' motion for a new trial by finding that the [V]erdict did not address the issue of superseding cause because: (*i*) there were no superseding causes that would extinguish the liability of any of the [D]efendants; (*ii*) the [D]efendants did not identify any act that would constitute a superseding cause; (*iii*) the actions of the child operator could not have been a superseding cause because they were foreseeable and/or not so unusual or unexpected as to break the chain causation, and were the gravamen of the tort of negligent entrustment; (*iv*) the actions of [P] laintiff did not constitute a superseding cause; (*v*) there was no evidence that [P]laintiff called the [D]efendant back to the site; (*vi*) the act of calling the [D]efendants to return to the worksite nine days after the equipment

had been delivered to the site could not be considered a superseding cause, as it was foreseeable and/or not so unusual or unexpected as to break the chain of causation; and (*vii*) the [D]efendants waived any claim that the actions of the child or [P]laintiff constituted a superseding cause.

5. The trial court erred, or otherwise abused its discretion, in granting the defendants' motions for a new trial when it found that the operator's age was immaterial because: (i) it was undisputed that the child operated the instrumentality in an unsafe manner; (ii) none of the [D]efendants challenged the materiality of the child's age; and (iii) there was no dispute or disagreement, by any party to this litigation, that a [ten-year-old] child lacks the judgment and maturity necessary to operate a track loader.

6. The trial court erred, or otherwise abused its discretion, in granting the defendants' motion for a new trial by finding that it should have granted the modern defendants' motion for a mistrial or that modern could not prove that [P]laintiff's responsibility was 51 percent [51%] or greater without confronting him with unspecified comments allegedly made by the [P]laintiff.

7. The trial court erred, or otherwise abused its discretion, in grating the defendants' motions for a new trial because it was "shocked" by the [J]ury's finding that plaintiff was not responsible for his injuries, because there was more than adequate evidence in the record, including trial testimony from the [D]efense liability expert, supporting the [J]ury's finding that Mr. Rolland acted reasonably under the circumstances.

8. The trial court erred, or otherwise abused its discretion, in granting the defendants' motions for a new trial when it found that [the motion court] order had somehow improperly contributed to the [T]ury's finding that [P]laintiff was not negligent because: (*i*) the propriety of [the motion court's] order was not properly before the trial court; (ii) [the motion court's] order expressly provided that the liability of the other parties, including the [P]laintiff, would be decided by the [J]ury; and (iii) the parties were properly provided with the opportunity to fully litigate and argue the issues of [P]laintiff's contributory responsibility, if any.

9. The trial court erred, or otherwise abused its discretion, in granting the defendants' motion for a new trial when it found that the entry of summary judgment as to the modern defendants and as to the Senn Defendants somehow shifted the burden of proof to Irrgang and United Construction because: (i) the order granting summary judgment did not implicate Irrgang or United Construction Service in any way; (ii) the [J]ury was properly instructed as to the burden of proof; and (iii) the [J]ury's findings as to Irrgang and United Construction Services were supported by the evidence and the law.

10. The trial court erred, or otherwise abused its discretion, in granting the motion by Irrgang and Untied Construction Services for a new trial when it found that Defendant Irrgang's case should have been severed because Irrgang never moved for severance, and the court never raised the issue of severance until *after* the trial was concluded.

11. The trial court erred, or otherwise abused its

54

discretion, in granting the motions by Irrgang and United Construction Services for a new trial because: (*i*) the evidence established that Irrgang owned the premises, retained Senn, exercised control and/or the right of control over the track loader, and permitted the child to operate the machine knowing and/or having reason to know that the child was not competent to operate it; (*ii*) the evidence established that United Construction Services leased the track loader, exercised control and/or the right of control over the track loader, and permitted the child to operate the machine knowing and/or having reason to know that the child was not competent to operate it; and (*iii*) United Construction Services did not articulate any basis for a new trial other than an unsubstantiated claim that it was somehow inexplicably prejudiced by the entry of summary judgment as to the modern defendants and the Senn Defendants.

12. The trial court erred, or otherwise abused its discretion, in granting the Senn Defendants' motion for a new trial when it found that the entry of summary judgment somehow resulted in a "shocking" finding of forty percent liability as against the Senn [D]efendants because: (*i*) the Senn Defendants explicitly *admitted* liability; (*ii*) the Senn Defendants expressly consented to the entry of summary judgment so long as they were permitted to argue [P]laintiff's responsibility at trial; (*iii*) the issue of [P]laintiff's responsibility was, in fact, fully litigated and submitted to the [J]ury; and (*iv*) the [J]ury's finding with respect to [P]laintiff's responsibility was supported by the evidence.

13. The trial court erred, or otherwise abused its

discretion, in granting the defendants' motion for a new trial because it failed to view the record in the light most favorable to the [P]laintiffs.

14. The trial court erred, or otherwise abused its discretion, in granting the defendants' motions for a new trial because [P]laintiffs established each of the requisite elements of the tort of negligent entrustment, as set forth in Restatement (Second) of Torts §308, and as adopted by the Courts of this Commonwealth, as to each of the defendants.

15. The trial court erred, or otherwise abused its discretion, in granting the defendants' motions for a new trial on the basis of the exclusion of evidence of matters contained within the workers' compensation records because: (i) the evidence was unreliable and/or properly excluded and/or excludable under Pennsylvania Rule of evidence 403 and/or properly excluded as hearsay; (ii) the Senn Defendants should not be entitled to a new trial on account of the court's exclusion from evidence of documentation that was in the possession of and/or control of them, their counsel, and/or their insurers, but which was not timely produced; (iii) the evidence had not been sought or disclosed by any of the parties during the discovery process, but was, instead, *sua sponte* ordered produced by the court after trial was well underway; and (iv) the exclusion of the evidence at issue, even if deemed somehow improper, was nonetheless harmless error.

16. To the extent that the trial court based the grant of a new trial on its exclusion from evidence of statements contained in plaintiff's medical records, the trial court erred, or otherwise abused its discretion, in granting the

defendats' motions for a new trial on the basis of the exclusion of such evidence because: (i) the evidence was unreliable and/or properly excluded and/or excludable under Pennsylvania Rule of Evidence 403; (ii) the evidence was properly excluded as hearsay; (iii) the defendants never established that the statements contained in the medical records reflected statements that were made by Mr. Rolland; and (iv) the exclusion of the evidence at issue, even if deemed somehow improper, was nonetheless harmless error.

17. Above, [P]laintiffs have sought to preserve their ability to challenge on appeal this court's grant of a new trial in favor of [D]efendants on each and every one of the grounds argued in defendants' post-trial motions. If this court granted a new trial in favor of the [D]efendants on any other basis, then this court, in so doing erred, and abused its discretion.

18. The trial court erred, or otherwise abused its discretion, in denying plaintiffs' motions for a new trial because the evidence established that Irrgang, United Construction Services, and the modern defendants: (i) knew and/or had reason to know that a child was operating a dangerous instrumentality over which they exercised control and/or a right of control; (ii) knew and/or had reason to know that the instrumentality posed an unreasonable risk of serious physical injury if used by a child; and (iii) failed to take any action to prevent use of the instrumentality.

Discussion of Issues Averred in the 1925(b) Statement Filed by Ruick and Holly Rolland

1. This Court Did Not Award a New Trial Based

Solely on Any Error Found in the Motion Court's Order
that Granted Partial Summary Judgment in Favor of the
Rollands.

As will be more fully discussed below, this court did not
award a new trial based solely on any error that occurred
when the motion court granted partial summary judgment in
favor of the Rollands on issues of negligence entrustment.
When discussing this issue, this court merely meant to
suggest that the award of partial summary judgment was
extremely problematic when viewed in conjunction with
the verdict. The motion court's grant of partial summary
judgment was one of multiple problematic aspects of this
case. Contrary to the Rollands' position, this court had
the authority to review the propriety of the motion court's
order in conjunction with the verdict, and the coordinate
jurisdiction rule was not an impediment.[4] However, this
court never meant to reverse the order awarding summary

---

4. A well established principal in this Commonwealth is that
"The primary purpose of the rules is "to ensure fundamental fairness
in the justice system by preventing a party aggrieved by one judge's
interlocutory order to attack that decision by seeking and securing relief
from a different judge of the same court" *Id.* at 575, 664 A.2d at 1332.
However, this principle is inapplicable to a judge ruling on post-trial
motions. *See Commonwealth v. Oakes*, 481 Pa. 343, 392 A.2d 1324
(1878). The purpose of post-trial motions is to promote judicial economy
by offering the trial court the initial opportunity to correct error before
burdening the appellate courts. *In re Smith*, 393 Pa. Super. 39,49, 573
A.2d 1077, 1081 (1990). Moreover, litigants must raise all allegations
of error on post-trial motion or they will be deemed waived on appeal.
*Bryant v. Girard Bank*, 358 Pa. Super. 335,344, 517 A.2d 968, 973
(1986). Necessarily then, the judge assigned to hear such motions must
be able to decide them, even where (as is commonplace in large urban
judicial districts) the challenged rulings have been made by several
different judges of the same court. *Taylor v. City of Philadelphia*, 692
A.2d 308,312 (Pa. Commw. Ct. 1997); *See also Chestnut v. The Hill Sch.*,
718 A.2d 336 (Pa., Super. Ct. 1998); *Borough of Jefferson v. Bracco*, 160
Pa. Commw. 681, 687, 635 A.2d 754, 757 (1993) (subsequent judge on
post-trial motion under Pa. R.C.P. 227 "is bound only by the law and the
limits of discretion").

58

judgment.

The motion court's order was problematic for several reasons.[5] First, it removed from the case the

---

5. Several years ago, this court presided over an assessment of damages trial in an action that was brought primarily on a theory of wrongful use of a civil proceeding, 42 Pa. Cons. Stat. Ann. § 8354, otherwise known as a Dragonetti Action. That case had a similar posture to this action in that the motion court had granted a motion for summary judgment on the issue of liability. Although this matter pertained to a different cause of action then the case *sub judice*, the logic employed by the court in review of a summary judgment motion previously granted on behalf of a plaintiff' prior to a trial on damages is quite instructive. The Superior Court ultimately remanded the case for a new trial because it felt that the pretrial award of summary judgment was erroneous when issues of material fact existed for a jury to determine. In *Morris v. DiPaolo*, 930 A.2d 500, 505 (Pa. Super. 2007), the court wrote:

> To sustain a claim for wrongful use of civil proceedings, a plaintiff must prove that the defendant initiated or continued civil proceedings against the plaintiff: (a) without probable cause or in a grossly negligent manner; (b) for an improper purpose; and (c) that those proceedings were terminated in favor of the plaintiff. *Banner v. Miller*, 701 A.2d 232, 238 (Pa. Super. 1997). The burden of establishing each of these elements lies squarely with plaintiff...
> Therefore, in order to justify the grant of summary judgment in his favor, a plaintiff must establish that there is no dispute of material fact with respect to each element. A careful review of the record before the trial court at summary judgment reveals that [the plaintiff] had not met this very high burden...
> Again, as we noted above, as long as an attorney believes that there is a slight chance that his client's claim will be successful, it is not the attorney's duty to pre-judge the case. [The defendant — attorney's] statement that the case against [the plaintiff] was "attenuated", while sufficient to allow for an inference of improper motive, is not sufficient to support a finding of improper motive as a matter of law. In light of the foregoing discussion, we conclude that [the plaintiff] had not met the extremely high burden necessary to sustain a grant of summary judgment on the issue of liability. [The defendant — attorney] had not conceded that he acted with an improper purpose, and therefore it was [the plaintiff — attorney's] burden to establish this element by a preponderance of the evidence. With a record as inconclusive as this one regarding [the defendant — attorney's] intent, the subjective state of mind under which [defendant — attorney] was acting remained an issue of fact to be determined by the jury.
> We recognize that the evidence of record in the case *sub judice* established a *prima facie* case against [the defendant — attorney]; however, it did not foreclose all issues of material fact. Accordingly, it was error for the trial court to enter summary judgment in favor

determination of whether the defendants negligently entrusted the track loader to Stephen Senn's ten-year-old son. The Rollands bore the burden of proof on the issue of negligent entrustment and the question of whether a defendant's conduct is negligent is usually left to the jury when conflicting evidence exists in the record. *Johnson v. Walker*, 376 Pa. Super. 302, 307 (1988) (the question of negligence is usually decided by the jury). *Davidson v. Schuylkill Traction Co.*, 4 Pa. Super. 86, 89 (1897) (negligence is always a question for the jury whenever there is conflicting testimony).[6] The issue of negligent

---

of [the plaintiff — attorney] on the issue of liability. As this renders the remainder of the appeal moot, we need not address any of [the defendant — attorney's] other issues on appeal.

6. It was plaintiffs' burden to prove negligent entrustment and serious issues remained as to who was actually in possession of the track loader that was supplied to the ten-year-old child. For example, Mr. Rolland's act of signing for the track loader created, at the very least, a circumstantial case as to whether he was in possession of the track loader at the time it was entrusted to the child operator. The defendants were entitled to have this issue present to the jury. The Restatement of Torts § 388 entitled Chattel Known to be Dangerous for intended use reads in relevant part:

> One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so.

The Restatement of Torts § 389 entitled Chattel Known to be Incapable of Safe Use reads in relevant part:

> One who supplies directly or through a third person a chattel for another's use knowing that the chattel is unlikely to be made reasonably safe before being put to a use which the supplier should expect it to be put, is subject to liability for bodily harm caused by such use to those whom the supplier should expect to use the chattel or to be in the vicinity of its probable use and who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent, although the supplier

entrustment in the case sub judice was (and is) extremely difficult to assess because all of the parties who were involved in this action seemed comfortable with the fact that Mr. Senn's ten-year-old son was operating the track loader. Mr. Rolland's testimony alone established that he witnessed the child operating the track loader for several days prior to the accident and did nothing to intervene.

Secondly, it awarded summary judgment when significant issues of material fact remained to be decided. For example, the fact that Mr. Rolland signed for the track loader constituted, at the very least, a circumstantial case as to whether he was in possession of the track loader. There was also an issue as to whether Mr. Rolland's decision to direct the operation of the track loader on August 14, 2009, as well as the child's operation of the track loader and his failure to follow Mr. Rolland's instructions constituted an independent superseding cause. This accident would not have occurred if Mr. Rolland had not approached the track loader and begun to give the ten-year-old child directions. The motion court's order was problematic in that it shaped the case in a manner that predetermined that the ten-year-old child was actually at fault for the accident. This court would never suggest that a ten-year-old child was in fact competent to operate heavy equipment on a construction site. However, Mr. Senn's ten-year-old son had been

---

has informed the other for whose use the chattel is supplied of its dangerous character.

The Restatement of Torts § 390 Chattel for Use by a Person Known to be Incompetent reads in relevant part:

One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or from facts known to him should know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect to share in, or be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them.

operating the track loader on the Irrgang property for several days without incident. The lapse in time between when the modern defendants' driver, Kevin Cann, delivered the track loader and saw the child operating it and the date of the accident was also a significant hurdle for the plaintiffs in casually connecting the modern defendants' negligent behavior to this accident. Finally, in his testimony, Mr. Senn's son suggested that the accident occurred because he misheard Mr. Rolland. He testified that he thought Mr. Rolland told him to go and he began to move the track loader forward. Based on his version of events, his ability to manually operate the track loader was not really at issue. It was possible that he simply misheard the directions given by Mr. Rolland. If he had been an adult, he still might have misheard the directions and this accident might still have occurred.

Thirdly, the order impermissibly shifted the burden of proof to the modern defendants to prove they had not negligently entrusted the track loader to Stephen Senn's ten-year-old son. This was particularly significant for defendants, Bruce Irrgang and United Construction Service, because the order found that the modern defendants had negligently entrusted the track loader. An extremely inconsistent and prejudicial result was created by the Rollands' approach to motioning for summary judgment against the modern defendants while at the same time allowing the jury to determine the negligence of Bruce Irrgang and United Construction Services. This was inconsistent in that the modern defendants leased the track loader directly to United Construction Services and Mr. Rolland signed for the track loader. The posture of this case was illogical in that the modern defendants were held liable for negligent entrustment while the company

that leased the equipment from the modern defendants, United Construction Services, was permitted to present a defense. If the modern defendants were deemed to have negligently entrusted the track loader then logically, United Construction Services should also have been found liable for negligent entrustment. The posture of the case essentially suggested that Bruce Irrgang and United Construction Services should be found liable for negligent entrustment when even the Rollands, themselves, felt that their liability should be assessed by the jury. The Rollands' position was inconsistent in this regards and will require a new trial.

2. The Verdict Simply was Against the Sheer Weight of the Evidence.

A new trial may be awarded based on the a jury's verdict being against the weight of the evidence only when the verdict is so contrary to the undisputed evidence as to shock one's sense of justice. *Davis v. Mullen*, 565 Pa. 386, 390, 773 A.2d 764, 766 (2001). The verdict must be so shocking as "to make the award of a new trial imperative, so that right may be given another opportunity to prevail." *Vatlimo v. Eaborn Truck Service*, 777 A.2d 1163, 1165 (Pa. Super. 2001). The evidence supporting the verdict must be "so inherently improbable or at variance with admitted or proven facts or with ordinary experience as to render the verdict shocking to the court's sense of justice." *Rittenhouse v. Hanks*, 777 A.2d 1113, 1119 (Pa. Super. 2001). A litigant "is not entitled to a new trial where the evidence is conflicting and the finder of fact could have decided either way." *Fanning v. Davne*, 795 A.2d 388, 393 (Pa. Super. 2002). Nor should a new trial be granted simply because the trial judge, on the same facts, would have arrived at a different conclusion. Davis, 565 Pa. 386

(2001). Rather, it is axiomatic that questions of credibility are to be decided by the jury, which "is entitled to believe all, part, or none of the evidence presented." *Pioneer Commercial Funding Corp. v. American Financial Mortgage Corp.*, 797 A.2d 269, 279 (Pa. Super. 2002). A weight of the evidence challenge concedes that there was sufficient evidence to sustain the verdict, but asserts that the verdict was against the weight of the evidence. *Fanning v. Davne*, 795 A.2d 388, 393 (Pa. Super. 2002).

This court granted a new trial because the jury verdict was against the weight of the evidence. The finding of no liability on the part of Mr. Rolland was extremely suspect given the posture of this case as presented to the jury. At trial, Mr. Rolland alleged that he was an independent contractor who was working on a property owned by Mr. Irrgang. This allegation directly contradicted statements in the workers' compensation file; however, this was his contention at trial. If Mr. Rolland was in fact an independent contractor, then he was responsible for his own voluntary decision to approach the track loader and give directions to the ten-year-old child.

The jury's decision to find no comparative negligence on the part of Mr. Rolland defies logic. Mr. Rolland signed for the track loader and was heavily involved in this construction project. He was acquainted with Stephen Senn and had worked for Bruce Irrgang for many years. Significant evidence was presented to establish that Mr. Rolland was supervising the jobsite, and he had ample opportunity to observe the ten-year-old child operating the track loader. Under the facts of this case, the jury's finding of no comparative negligence on the part of Mr. Rolland juxtaposed to its finding in excess of twenty percent (20%)

against the modern defendants defies logic. The modern defendants' truck driver, Kevin Cann, was only briefly exposed to the child operator ten days prior to the accident while Mr. Rolland was onsite every single day. There was also a serious question as to whether the modern defendants could have prevented the ten-year-old from operating the track loader. The leasing agreement entered into between the modern defendants and United Construction Services allowed for repossession in the event of misuse; however, the modern defendants also agreed to provide a track loader for the construction project on the property owned by Mr. Irrgang. If the modern defendants had in fact repossessed the track loader, they might have been found in breach of their agreement to provide construction equipment.

3. The Issue of Whether the Rollands were Able to Establish Each and Every Element of the Tort of Negligent Entrustment Is Completely Unrelated to this Court's Decision to Grant A New Trial.

This court granted the defendants a new trial because the verdict was against the weight of the evidence. The workers' compensation filed produced midway through trial contributed to this shocking verdict and the modern defendants' motion for mistrial should have been granted. In conjunction with the prejudice caused by this court's failure to enter mistrial, the order entered by the motion court was problematic. However, the ability of the plaintiffs to establish a *prima facia* case of negligent entrustment was really irrelevant to the award of a new trial.

When discussing the motion for post-trial relief filed by the modern defendants, this court highlighted the fact that it felt that the Rollands had failed to prove the tort of negligent entrustment against the modern defendants.

*See Burkholder v. Genway Corporation*, 432 Pa. Super. 36 (1994) (standing for the proposition that an automobile leasing company that leases automobiles to a corporate entity has no duty to ascertain which corporate employee will operate its automobiles and whether those employees have a valid driver's license).[7] Critical in this regard was the fact that the modern defendants did not directly entrust the track loader to the ten-year-old boy. Mr. Rolland ordered and signed for the track loader on behalf of United Construction Services. Therefore, there was an issue as to whether the track loader was entrusted to either Mr. Rolland or United Construction Services. Since Mr. Rolland signed for the track loader there was at least a circumstantial case as to whether he, himself, had entrusted the equipment to the child. At most, it could be said that the modern defendants constructively entrusted the track loader to the child, and constructive entrustment should have automatically been a question that was submitted to a finder of fact.[8] Although Kevin Cann saw the ten-year-old boy operating the track loader some nine or ten days prior to the accident, it was really a jury question as to whether it could be said that the modern defendants constructively entrusted the track loader to the child on the day of the accident — some nine or ten days later.

---

7. In *Burkholder*, 637 A.2d 650, 655 (1994), the Superior Court wrote, "We will not countenance a result which imposes a duty on automobile leasing companies to predict which corporate employee will operate the vehicle and whether such employee has a valid driver's license". The lapse in time, the competency of the ten-year-old, and the conduct of Mr. Rolland himself were all factors that should have been argued, presented and decided by the jury.

8. When discussing a motion for non-suit on the issue of recklessness, this court questioned counsel for the Rollands on their theory of the case as it pertained to the modern defendants. Counsel explained that they were proceeding against Modern on a theory of vicarious or constructive entrustment. (Tr. Transcr, 73 (3/26/13).)

The Rollands might attempt to argue on appeal that this court was not in a position to assess their ability to prove negligent entrustment because the motion court's pretrial ruling removed the issue of the modern defendants' liability from the case prior to trial. Any argument along these lines would be faulty because the motion court's ruling did not remove the issue of liability on the part of Bruce Irrgang or United Construction Services. In theory, the Rollands were in a position where they should have presented all of their evidence and their entire case in order to establish liability against the remaining defendants. Therefore, this court had an opportunity to review the Rollands' entire case, and it is of the opinion that the plaintiffs' evidence on the tort of negligent entrustment had clear issues of material fact that were never submitted to the jury.

4. The Award of a New Trial was Not Based Solely on the Failure of the Verdict to Address Superseding Cause.

This court did not award a new trial based on the failure of the verdict to address superseding cause. However, superseding cause was intertwined with this court's decision to award a new trial based on the inconsistent nature of the verdict that failed to assess comparative negligence on the part of Mr. Rolland. Mr. Rolland's decision to direct the track loader should have been fully considered by the jury. The child had been operating the track loader for several days prior to this accident and everything was okay up and until the point at which Mr. Rolland decided to interfere with his operation of the track loader. Furthermore, evidence of the child's improper operation of the track loader was never presented to the jury because the plaintiff made a tactical decision to withdrawal the case against Stephen Senn's ten-year-old son.

### 5. This Court Did Not Award a New Trial Based on the Fact that the Age of the Operator of the Track Loader was Immaterial.

This court did not award a new trial by finding that operator age was immaterial in this case. This court would never hold as a matter of law that a ten-year-old child is competent to operate a track loader. This court when passing on motions for post-trial relief, simply commented on the fact that counsel for the Rollands focused an extraordinary amount of their case on the fact that a ten-year-old child had operated the track loader. The reality was that the ten-year-old child had been operating the track loader without incident for a number of days prior to the accident. Mr. Rolland, himself, felt confident enough in the child's ability that he was willing to walk within a few feet of the track loader and direct the child's operation. Focusing on the age of Stephen Senn's son, counsel made dramatic, inflammatory argument and requested punitive damages. The comments that were made by this court during the hearing on motions for post-trial relief were really directed to counsel's approach to the case and demand for punitive damages. Counsel characterized the defendants' conduct as outrageous or reckless when the reality was that there was no solid evidence present at trial that the ten-year-old child was in fact an incompetent operator or that he was the legal cause of the accident. As previously mentioned, Mr. Senn's son testified that Mr. Rolland told him to go ahead and he proceeded to move the track loader in a forward direction. If a jury were to accept his version of events, it might have come to the conclusion that the accident happened because the child misheard the directions given by Mr. Rolland and not that the child was in fact an incompetent operator.

### 6. This Court Should Have Granted a Mistrial in Favor of the Modern Defendants When the Workers' Compensation File was Produced Midway Through Trial.

This court committed a prejudicial error when it denied the modern defendants' motion for a mistrial after the contents of the workers' compensation file were produced midway through trial. The modern defendants should have been given the opportunity to confront Mr. Rolland with his alleged admissions. The trial court has the power to order a mistrial in the interest of manifest necessity when the ends of public justice would otherwise be defeated. The decision to declare a mistrial is left to the sound discretion of the trial judge, but the power ought to be used with the greatest caution because it is a drastic measure. A mistrial is required based on a discovery violation when it is of such a nature as to deprive the defendant of a fair trial. *Commonwealth v. Ligons*, 565 Pa. 417, 773 A.2d 1231 (2001); *Commonwealth v. Counterman*, 553 Pa. 370, 719 A.2d 284 (1998).

The workers' compensation file contained numerous alleged admissions made by all parties to this litigation with the exception of the modern defendants. All indications were that the modern defendants knew nothing of the contents of the workers' compensation file prior to production. The modern defendants should have been given an opportunity to review this file and prepare a defense. Five days into trial, after the modern defendants had given their opening statement, counsel for the Rollands requested copies of statements from a workers' compensation filed. The record indicates that counsel for the Rollands had been aware of these statements since March of 2010. Yet, counsel chose to wait until several days into trial, after the modern defendants had given their

opening statement, to divulge this information to opposing counsel. In the wake of the file, Mr. Senn took the fifth amendment and Mr. Irrgang refused to testify.

The modern defendants should have been permitted to confront Mr. Rolland with the statement that he allegedly made to Elizabeth Kutz. Under Pennsylvania Rule of Evidence 803 (25)(A) a party's admission contrary to the position maintained by that party at trial is always admissible as an exception to the hearsay rule. Mr. Rolland's alleged admission that he was supervising construction on Mr. Irrgang's property at the time of the accident fits within an exception to the hearsay rule because it directly contradicted Mr. Rolland's trial testimony. *See Finnerty v. Darby*, 391 Pa. 300 (1958) (statements made to police by a hospitalized, severely injured driver following an accident were admissible at trial to contradict the driver's testimony).

Midway through trial, this court was ambushed with an evidentiary issue that had a drastic impact on this case. The alleged admissions that Mr. Rolland was supervising the worksite became extremely significant when coupled with the fact that Mr. Rolland contacted the modern defendants and ordered construction equipment, including the track loader at issue in this accident. Upon delivery, he signed for the track loader, and he was directing its operation at the time of the accident. This was extremely persuasive evidence that was directly relevant to contested matters at trial — specifically, Mr. Rolland's supervisory role on the construction site. This would have affected the outcome of trial, and this court's decision to preclude the evidence and proceed with trial prejudiced the modern defendants.

7. This Court Did Not Abuse Its Discretion When It

70

Found the Jury Verdict Shocking Because the Jury Failed to Assess Comparative Negligence against Mr. Rolland.

The Pennsylvania Supreme Court has written:

> A new trial is warranted on weight of the evidence grounds only 'in truly extraordinary circumstances i.e., when the jury's verdict is 'so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.' *Armbruster v. Horowitz*, 572 Pa. 1, 813 A.2d 698, 703 (2002)... This court has also noted that one of the reasons that the power and duty to upset a verdict on weight grounds is so narrowly circumscribed is because of the obvious tension between the broad, settled, exclusive role of the fact-finder in assessing credibility and the limited power of trial judges, in narrowly circumscribed circumstances, to overturn those assessments when the judicial conscience is not merely disappointed, or uncomfortable, but shocked. *Id.* at 704.

*Criswell v. King*, 575 Pa. 34, 834 A.2d 505 (2003).

In the case *sub judice*, the record was replete with instances of Mr. Rolland's culpability in this instance and the jury should have assessed comparative negligence against him. As discussed throughout this opinion, Mr. Rolland ordered and signed for the track loader. He was onsite almost every single day which meant that he had an opportunity to reflect on the implications of permitting Stephen Senn's ten-year-old son to continue to operate the track loader because he had repeatedly seen the child operate the equipment. On the day of the accident, Mr. Rolland approached the track loader while it was being

operated by the ten-year-old child and began to direct the child's operation of the piece of heavy equipment. On these facts, the jury's assessment of zero liability against Mr. Rolland is almost unfathomable. This irrational finding was further compounded by the verdict assessing twenty percent (20%) responsibility against the modern defendants when they had merely tangential involvement in this construction project.

8. This Court Awarded a New Trial because the Jury's Finding that Mr. Rolland Was Not Negligent Was Against the Weight of the Evidence.

Issues raised in eighth paragraph of the Rollands' 1925(b) statement were previously addressed in the first paragraph of the discussion section of this opinion when this court addressed the first issues raised by the Rollands in their 1925(b) statement. As previously stated and reiterated throughout this opinion, this court did not award a new trial based on the motion court's pretrial order that granted partial summary judgment on the issue of negligent entrustment. It simply found the order problematic when viewed in conjunction with the verdict finding no liability or comparative negligence against Mr. Rolland. In reality, the award of partial summary judgment basically shifted the burden of proof to defendants to prove they had not negligently entrusted the track loader to Stephen Senn's ten-year-old son.

To briefly recap prior discussion, the order finding that the modern defendants had negligently entrusted the track loader was particularly significant for Bruce Irrgang and United Construction Services because it skewed the case in an extremely inconsistent and prejudicial fashion. The plaintiffs decided to motion for summary judgment

against the modern defendants and ultimately prevailed in that motion while at the same time they decided to allow the jury to decide whether Bruce Irrgang and United Construction Services negligently entrusted the track loader to Stephen Senn's ten-year-old son. This was inconsistent in that the modern defendants leased the track loader directly to United Construction Services, and Mr. Rolland signed for the track loader himself. The posture of this case was illogical in that the modern defendants were held liable for negligent entrustment while the company that leased the equipment from the modern defendants, United Construction Services, was permitted to present a defense. The posture of the case basically assumed liability on the part of United Construction Services when even the Rollands felt there were factual issues for the jury to determine. The position of the Rollands in their presentation of the case was inconsistent in this regard and will require a new trial.

9. The Trial Court Did Not Abuse its Discretion in Granting a New Trial to Bruce Irrgang and United Construction Services.

The issue of partial summary judgment and its affect of shifting the burden of proof as it pertained to Bruce Irrgang and United Construction Services was specifically addressed in paragraph eight above; therefore, there is no need to reiterate that discussion herein. However, it should be mentioned that the verdict in the case *sub judice* was joint and several and that the jury apportioned negligence between multiple defendants, a new trial as to one defendant would require a new trial as to all defendants. On retrial, the jury will need to hear all of the evidence and again apportion fault.

10. Defendants Did Not Receive A New Trial Based on Principals of Severance Related to Bruce Irrgang and United Construction Services.

On August 5, 2013, this court held argument on motions for post-trial relief. During argument this court suggested that severance of Bruce Irrgang and United Construction might have been appropriate given the posture of this case. The pretrial ruling made by the motion court that granted partial summary judgment against the modern defendants placed Bruce Irrgang and United Construction Services at somewhat of a disadvantage in defending this case. The modern defendants were found to have negligently entrusted the track loader to Stephen Senn's ten-year-old son when in fact they were not in possession of the track loader. The track loader had been leased to United Construction Services. As previously mentioned, the posture of the case implied or suggested that United Construction Services had negligently entrusted the track loader when no specific finding of liability had been made.

Despite the fact that this court suggested that severance might have remedied the inherent conflict in the posture of this case, it did not award a new trial based on any issue related to severance as it related to Bruce Irrgang and United Construction Services. As discussed throughout this opinion, the award of a new trial was based on preclusion of the contents of the workers' compensation file and the modern defendants' motion for a mistrial. The court also awarded a new trial based on what it believed was an inconsistent verdict that was against the sheer weight of the evidence to such an extent that it shocked the conscience.

11. This Court Did Not Commit Reversible Error

When It Granted Motions for Post-Trial Relief Filed by Bruce Irrgang and United Construction Services Despite the Fact that the Rollands Were Able to Present Favorable Evidence in Support of Their Case.

In paragraph eleven of their 1925(b) Statement, the Rollands cited to a laundry list of evidence that helped to establish their case against Bruce Irrgang and United Construction Services. For example, the Rollands cited to the fact that these defendants owned the property where the accident occurred and that they leased the track loader that was involved in the accident. The evidence cited by the Rollands was relevant to the extent that they were able to establish a *prima facie* case of negligent entrustment against Bruce Irrgang and United Construction Services. However, this evidence did not warrant an automatic judgment in favor of the Rollands on the issue of negligent entrustment and what amounted to basically an assessment of damages against Bruce Irrgang and United Construction Services. As previously discussed, an extremely inconsistent and prejudicial result was created by the Rollands' decision to gain the award of partial summary judgment against the modern defendants while at the same time deciding to allow the jury to determine the negligence of Bruce Irrgang and United Construction Services.

Despite all of the favorable evidence listed by the plaintiffs, the award of a new trial was required when this court decide to grant the modern defendants a new trial. This court determined that it erred when it denied the modern defendant motion for a mistrial based on the contents of the workers' compensation file produced midway through trial. In light of the fact that the verdict in the case *sub judice* was joint and several and that the

jury apportioned negligence between multiple defendants, a new trial as to one defendant would require a new trial as to all defendants. On retrial, the jury will need to hear all of the evidence and again apportion fault.

12. This Court Did Not Abuse Its Discretion When It Found the Jury Verdict Shocking Because the Jury Failed to Assess Comparative Negligence against Mr. Rolland.

This court awarded a new trial because the verdict assessing no comparative negligence against Mr. Rolland was against the sheer weight of the evidence to such an extent that it shocked the conscience of this court. When discussing its decision to award a new trial, this court highlighted the fact that the finding of forty percent (40%) liability against the Senn defendants was shocking juxtaposed to the finding of zero liability on the part of Mr. Rolland. The evidence establishing Mr. Rolland's comparative negligence has been thoroughly discussed throughout this opinion to such an extent that it does not need to be reiterated again. This court specifically addressed issues related to Mr. Rolland's comparative fault in the first and second numbered paragraphs of the discussion section of this opinion. It should suffice to say that no error occurred in this regard.

13. This Court Reviewed the Record in a Light Most Favorable to the Rollands and Still Came to the Conclusion that a New Trial Was Warranted.

In the thirteenth paragraph of their 1925(b) statement, the Rollands alleged that this court erred when it failed to review the record in a light most favorable to the verdict winner.

The Rollands' contention is categorically unfounded.

This court reviewed the record and felt that the defendants were entitled to a new trial. It authored this opinion in support of its rulings.

14. The Inability of the Rollands' to Prove Negligent Entrustment was NOT a Central Issue in this Court's Decision to Award a New Trial.

This court simply did not award a new trial based on the Rollands' failure or success in proving negligent entrustment. The Rollands' ability to prove a *prima facia* case of negligent entrustment was really irrelevant to this court's decision to award a new trial. It was, and remains, the opinion of this court that the Rollands' case against the modern defendants was extremely problematic in light of the facts and evidence implicating Mr. Rolland that a juror could construe as creating an independent superseding cause thereby breaking the causal chain. The ability to establish a *prima facia* case of negligent entrustment is distinguishable from the right to judgment as matter of law (being entitled to summary judgment). That being said this court awarded a new trial based on the implications of the late production of the workers' compensation file and the inconsistent and shocking verdict that failed to find comparative negligence. It was the opinion of this court that the award of partial summary judgment on the issue of negligent entrustment contributed to this inconsistent verdict.

15. A New Trial is Required Based on the Prejudicial Error that Occurred When this Court Precluded Reference to the Workers' Compensation File and Denied the Modern Defendants' Motion for Mistrial.

This court previously addressed the issue of whether the modern defendants should have been permitted to

conduct discovery related to the workers' compensation file when it discussed the sixth paragraph of the Rollands' 1925(b) statement. During that discussion, this court also addressed the fact that the modern defendants should have been permitted to cross-examine Mr. Rolland with statements made to workers' compensation adjuster, Elizabeth Kutz.

16. This Court Did Not Award a New Trial Based on Exclusion of Evidence Contained in Mr. Rolland's Medical Records.

This court simply did not award a new trial based on the exclusion of any statements found in Mr. Rolland's medical records. It relied solely on the alleged admissions made by Mr. Rolland that were contained in the workers' compensation filed produced midway through trial. These alleged admissions were made to workers' compensation adjuster, Elizabeth Kutz. In this statement, Mr. Rolland allegedly admitted that he was working for the Senn defendants and supervising the construction project on Mr. Irrgang's property at the time of the accident. This court also awarded a new trial because it found the verdict that assessed no comparative negligence against Mr. Rolland shocking and against the weight of the evidence.

17. This Court has Clearly Explained the Grounds for the Award of a New Trial and the Rollands Should be Limited on Appeal to Pursue only Errors Defined in Their 1925(b) Statement.

In paragraph seventeen of their 1925(b) statement, the Rollands requested the right to amend their 1925(b) statement after they have an opportunity to review the 1925(b) opinion authored by this court. Whether amendment will be necessary is an issue that can be

addressed at a later date. At this point in time, it should suffice to say that this opinion was authored in response to the Rollands' 1925(b) Statement of matters complained of on appeal. This court hopes that it has thoroughly addressed the issues presented by the Rollands.

18. Based on the Award of a New Trial, the Motion for Post-Trial Relief Filed on Behalf of the Rollands is irrelevant at this Time and Juncture.

This court awarded a new trial on all issues; therefore, the Rollands' motion for post-trial relief is really a moot issue for all intents and purposes. In their motion for post-trial relief, the Rollands argued that this court erred when it limited the jury's ability to award punitive damages against only the defendant, Stephen Senn. The Rollands argued that the jury should also have been permitted to assess punitive damages against Bruce Irrgang, United Construction Services, and the modern defendants. They argued that these defendants engaged in outrageous misconduct with an evil motive or reckless indifference to a known risk of harm.

This court disagreed with the Rollands' characterization of the evidence and declined to present the question of punitive damages as to all defendants. With the exception of Mr. Irrgang, himself, all of the parties to this litigation admitted that they had seen Stephen Senn's ten-year-old son operate the track loader. Obviously, the child should not have been operating the track loader; however, he had successfully operated the track loader on Mr. Irrgang's property on several occasions prior to the accident. Either all of the parties, including Mr. Rolland, were negligent as a matter of law for permitting this situation to exist or the issue of negligent entrustment should have been

submitted to the jury. This same principal holds true with regards to punitive damages. With the omission of Stephen Senn from the discussion, either a *prima facia* case for the assessment of punitive conduct was established against all of the parties to this litigation or the issue of punitive conduct needed to be completely removed from the case. All of the parties, including Mr. Rolland, bore responsibility for this accident.

## The Appeal Filed by the Modern Defendants

Interestingly enough, the modern defendants filed an appeal from the orders entered by this court that awarded the modern defendants a new trial on all issues. This court requested a 1925(b) concise statement of matters complained of on appeal. In this 1925(b) statement, the modern defendants averred numerous issues and argued that this court erred as follows:

1. *Judgment Notwithstanding the Verdict*: Whether the court should have granted modern's post-trial motion for judgment notwithstanding the verdict because modern did not owe a duty to [P]laintiff under the facts and circumstances of this case. While [P]laintiff posited a negligent entrustment theory of liability, modern demonstrated under well-settled precedent in its post-trial motion that no such duty exists as to it...

2. *Discovery*: Whether, in granting modern a new trial, the court should have also granted modern additional discovery in preparation of the new trial...

3. *Summary Judgment*: When a new trial proceeds, whether the April 11, 2012 order of [the motion court] granting plaintiffs' motion for partial summary judgment and/or the May 24, 2012 order of [the motion

court] amending the prior April 11, 2012 order will, and did previously at trial, improperly govern the trial because genuine issues of material fact exist as to the alleged negligence of Modern, Senn Landscaping, Inc. and Stephen Senn.

4. *Summary Judgment*: When a new trial proceeds, whether the April 11, 2012 order of [the motion court] and the May 24, 2012 order of [the motion court] granting plaintiffs' motion for partial summary judgment will, and did previously at trial, improperly govern the trial because it failed to acknowledge the existence of a superseding cause for the damages sustained by plaintiff, including but not limited to the action of the plaintiff and/or [the ten-year-old boy]

5. *Summary Judgment*: When a new trial proceeds, whether the April 11, 2012 order of [the motion court] and the May 24, 2012 order of [the motion court] granting plaintiffs' motion for partial summary judgment will, and did previously at trial, improperly govern the trial because it impermissibly shifted the burden of proof as [to the plaintiffs' claims], which should properly rest with plaintiff, instead to modern depriving modern from meaningfully defending itself at trial by requiring modern to prove that plaintiff was 51% responsible for the incident to absolve modern.

6. *Summary Judgment*: When a new trial proceeds, whether the April 11, 2012 order of [the motion court] and the May 24, 2012 order of [the motion court] granting plaintiffs' motion for partial summary judgment will, and did previously at trial, deprive the jury of its ability to meaningfully apportion negligence, if any, among all parties, including Plaintiff, Ruick

Rolland...

7. *Summary Judgment*: When a new trial proceeds, whether the April 11, 2012 order of [the motion court] and the May 24, 2012 order of [the motion court] granting plaintiffs' motion for partial summary judgment will, and did previously at trial, improperly influence the [J]ury's determination of negligent entrustment against modern by virtue of improper assumption by the jury of the negligence of the underlying operator of the equipment, [the ten-year-old son of Stephen Senn], a necessary prerequisite for any determination on negligent entrustment.

8. *Summary Judgment*: When a new trial proceeds, whether the April 11, 2012 order of [the motion court] and the May 24, 2012 order of [the motion court] granting plaintiffs' motion for partial summary judgment will, and did previously at trial, improperly effect the [J]ury's determination of the liability of all parties by virtue of the verdict sheet configuration. The prior orders on summary judgment resulted in the verdict sheet being provide to the [J]ury already designating modern as negligent, which prevented the [J]ury from being able to fully apportion the negligence of all parties which would include the ability to find modern [zero percent (0%)] liable.

Discussion of Issues Averred in the Modern
Defendants' 1925(b) Statement

1. The Rollands Will Probably Be Able to Establish a Prima Facia Case of Negligent Entrustment that Will Be Sufficient to Place the Issue of Negligent Entrustment Before the Jury on Retrial.

The modern defendants made a flawed argument when they argued that they owed no duty to the Rollands and that judgment notwithstanding the verdict should have been entered in their favor. A motion for judgment notwithstanding the verdict proceeds on the theory that there should have been a judgment as a matter of law in favor of the moving party because there was not sufficient evidence to submit the case to a jury. *Moure v. Raeuchle*, 604 A.2d 1003, 1007 (Pa. 1992). To briefly summarize in the most concise fashion, the modern defendants' motion for judgment notwithstanding the verdict was based on the concept that they leased the track loader to United Construction Services and that the Senn defendants took possession of the track loader and entrusted it to Stephen Senn's ten-year-old son. They basically argued that they were not responsible for the track loader once it left their possession. The problem with their argument is the fact that the ten-year-old was seen operating the track loader by their agent and truck driver, Kevin Cann, when he delivered the track loader. The track loader belonged to the modern defendants, and under the terms of the lease entered into with United Construction Services, the modern defendants retained the right to repossess the track loader if it was being misused. The modern defendants had specific knowledge that their track loader was being used by a ten-year-old. These facts created a *prima facia* case of negligent entrustment sufficient to overcome a motion for judgment notwithstanding the verdict.

Due to the pretrial order awarding partial summary judgment on the issue of negligent entrustment, the issue of whether the Rollands presented sufficient evidence to establish a *prima facia* case against the modern defendants was not an issue that was before this court until post-trial

review. The issue of negligent entrustment as it pertained to the modern defendants had been removed from the case for all intents and purposes. After reviewing the facts, this court is of the opinion that a new jury hearing the entire case could foreseeably come to a different conclusion as to the culpability of all of the parties, including the Rollands, on the tort of negligent entrustment.

2. In the Event that the Case *Sub Judice* is Remanded for a New Trial, Additional Discovery Can be Conducted at that Time.

This court did not enter an order establishing a discovery track because issues related to discovery are usually handled by team leaders or calendar judges in Philadelphia County. If the appellate court system affirms the decision to award a new trial made by this court, jurisdiction of this matter should be returned to the team leader or calendar judge who will probably set a trial date and permit any discovery deemed necessary. The question of whether the issues presented will require additional discovery would most practically be dealt with after the appellate court system decides whether in fact the decision to award a new trial will become a reality.

3.-8. The Propriety or Impropriety of the Decision of the Motion Court to Award Partial Summary Judgment on the Issue of Negligent Entrustment Was Not Decided by this Court.

This court did not explicitly overrule the motion court's order awarding partial summary judgment on the issue of negligent entrustment. It awarded a new trial based on rulings that it made during trial related to alleged admissions in the workers' compensation file. This court also awarded a new trial because it felt that the jury's

verdict finding no comparative negligence on the part of Mr. Rolland was against the weight of the evidence to such an extent that it shock the conscience. The order awarding partial summary judgment entered by the motion court played a significant role in creating this inconsistent and shocking verdict; however, this court never specifically intended to review that motion court order.

### The Appeal filed by Bruce Irrgang and United Construction Services, Inc.

Interestingly enough, Bruce Irrgang and United Construction Services filed an appeal from the orders entered by this court that awarded them a new trial on all issues. This court requested a 1925(b) concise statement of matters complained of on appeal. In this 1925(b) statement, the defendants raised numerous issues and argued that this court erred as follows:

1. The trial court erred in not granting judgment notwithstanding the verdict to [D]efendants, Irrgang and UCS where [Plaintiffs] failed to present evidence capable of establishing that these [D]efendants were negligent, or that their negligence was a substantial cause of the [Plaintiff's] accident and injury for the following among other reasons as more completely explained in [D]efendants' post-trial brief...

2. Defendants, Irrgang and UCS, were also entitled to judgment notwithstanding the verdict because the evidence established that [P]laintiff was reckless in moving directly in front of, or (as he testified) alongside and within two feet of a running track loader operated by a ten-year-old, and after placing himself in that position, turning his attention from this running

machine to perform the trivial task of moving a garden hose from the machine's path; the court should have concluded that this conduct was, as a matter of law, reckless and precluded him from recovering.

3. Alternatively, the court should have entered judgment in favor of the [D]efendants since the evidence established [Plaintiff's] comparative negligence in the circumstances of this accident exceeded any possible negligence on the part of [D]efendants as a matter of law and/or was the sole cause of [Plaintiffs'] harm.

4. Alternatively, the [C]ourt erred in failing to find that judgment notwithstanding the [V]erdict would have been awarded [D]efendants, Irrgang and UCS, since the Senn [D]efendants were 100 percent liable for [Plaintiffs'] harm.

Discussion of Issues Averred in the 1925(b) Statement Filed by Bruce Irrgang and United Construction Services

1.-4. The Defendants. Bruce Irggang and United Construction Services Were Not Entitled to Judgment in Their Favor so This Court Declined to Grant Their Request for Judgment Notwithstanding the Verdict.

The plaintiffs presented a *prima facia* case of negligent entrustment against Bruce Irrgang and United Construction Services; therefore, these defendants were not entitled to judgment notwithstanding the verdict. A motion for judgment notwithstanding the verdict proceeds on the theory that there should have been a judgment as a matter of law in favor the moving party because there was not sufficient evidence to submit the case to a jury. *Moure v. Raeuchle*, 604 A.2d 1003, 1007 (Pa. 1992).

An examination of the record illustrates ample evidence to submit the question of moving defendants' liability to the jury. The uncontested facts were that Bruce Irrgang owned the property where the accident took place and either he, or United Construction Services, employed all of the parties involved in this litigation. Based on plaintiffs' version of the events, Bruce Irrgang regularly monitored and controlled the progress of the construction project. Arguably, Mr. Irrgang acted as a general contractor. Mr. Rolland testified that Mr. Irrgang was physically present on the construction site and that he witnessed the ten-year-old operate the track loader on at least one occasion prior to the accident. The fact that United Construction Services leased the track loader was significant in this analysis because it was technically in possession of the track loader when the accident occurred. If in fact, Mr. Irrgang saw the boy operating the track loader that was leased by his company, United Construction Services, he could have intervened and prevented this accident.

The moving defendants were not entitled to a judgment in their favor as a matter of law. However, they should have been permitted to present a defense that was free from the presumption that they in fact negligently entrusted the track loader — a presumption created by the order granting partial summary judgment by the motion court. One of the major frustrations in dealing with the case *sub judice* was the fact that counsel for all of the parties seemed to confuse the difference between the ability to establish a *prima facia* case and the right to a judgment as a matter of law. The parties were entitled to a jury trial in which the Rollands carried the burden of proof, and the defendants were entitled to present a defense.

Conclusion:

For these reasons, this court awarded the defendants a new trial on all issues.